UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND PROCEDURES, INC.,

      Plaintiff,

v.                                              Case No. 01-C-1122

NORTHLAND FISHING TACKLE, INC.

      Defendant.

**DECISION AND ORDER**

Plaintiff Armament Systems and Procedures sued Northland Fishing Tackle for patent infringement, unfair competition, and violations of Wis. Stat. § 100.18, due to Northland's selling of a "Glo-Buster Lurelight" that Armament alleged infringed on its patent.[1] The Cincinnati Insurance Co. issued policies to Northland during the relevant period. Both Cincinnati and Northland have moved for summary judgment on the question of whether Cincinnati has a duty to defend Northland in this lawsuit. For the reasons given below, I conclude that the insurance policies do not cover the allegations made in Armament's complaint; therefore, Cincinnati's motion will be granted and Northland's denied.

**ANALYSIS**

The parties agree that there are no outstanding issues of material fact and devote their arguments to questions of contract interpretation. In Minnesota, whose law governs this action, the

---

[1] Wis. Stat. § 100.18 prohibits false, misleading or deceptive advertising.

insurer's duty to defend is triggered whenever a complaint "arguably" would come within the purview of the policy's coverage. *Home Ins. Co. v. National Union Fire Ins. of Pittsburgh,* 658 N.W.2d 522, 536 (Minn. 2003). The Cincinnati policies cover "advertising injury" arising out of "misappropriation of advertising ideas or style of doing business." (Rattan Aff., Ex. A at 19.) "'Misappropriation of advertising ideas' has been defined as the wrongful taking of another's manner of advertising." *Fluoroware, Inc. v. Chubb Group of Ins. Companies,* 545 N.W.2d 678, 682 (Minn. Ct. App. 1996). Northland focuses on the complaint's allegation that it falsely advertised its products were made in the United States (when in fact they were made in China), in violation of Wis. Stat. § 100.18. Northland argues that its use of the phrase "Made In The United States" to advertise its fishing lures is an "Advertising Idea" or "Style of Doing Business" under the policy.

In support of its argument, Northland places a great deal of emphasis on an unpublished case from the Northern District of Illinois, *Flodine v. State Farm Ins. Co.,* 2001 WL 204786 (N.D. Ill. 2001).[2] In that case, the court found a duty to defend a similar claim based on advertising injury. J.C. Penney was sued for selling products it advertised as being "Southwestern style" and which the plaintiffs–Native American groups–alleged could be falsely suggestive of Native American origin. According to the complaint, "Penney's advertising, marketing, display, offer for sale, and sale in its stores and catalogue of 'Southwestern-style' arts and crafts products, including those made by

---

[2]Cincinnati strongly argues that this court should not consider unpublished opinions like *Flodine*. I note first that the tide against the citation of unpublished opinions may be turning. Second, the case is from a district court whose opinion would not be binding on this court whether the case was published or unpublished. More importantly, however, a great many insurance disputes result in unpublished opinions because their holdings are typically so fact-specific. Thus, when an unpublished case is arguably on-point, and when the plaintiff makes it the centerpiece of its argument on summary judgment, I would be remiss if I did not at least consider the reasoning set forth in the unpublished opinion. Thus, I may consider the reasoning of *Flodine* and other unpublished cases without considering myself bound by their holdings in any way.

2

Flodine, violated the [Indian Arts and Crafts Act, or IACA] by falsely suggesting 'that they are authentic Indian products made by a Native American.'" *Id.* at *2. Among other things, the "injury sustained by [plaintiffs] as a result of the alleged violation consisted of consumer confusion and the loss of sales of their authentic Indian-made products to consumers who were persuaded to buy and wished to purchase authentic goods but were tricked into buying the counterfeits." *Id.*

The court found that "[m]any courts have construed the terms 'misappropriation of advertising idea' and 'misappropriation of the style of doing business' to mean, generally, a wrongful taking of the way another promotes its business, and have included 'passing off' and trademark and trade dress infringement allegations within this definition of 'advertising injury.'" *Id.* After a lengthy analysis of this definition as applied to the facts, the court concluded:

> Flodine's alleged offenses, the marketing and promotion of products as "authentic Indianmade," reasonably fall within the common meaning of "style of doing business" or "advertising idea." Capitalizing upon the goodwill associated with Indian-made products is a marketing idea concerned with how to persuade consumers to buy certain goods. The wrongful use of these ideas, or ways of marketing "Southwestern style" arts and crafts, are "advertising injuries" under the policy.

*Id.* at 11.

Although the parallels with *Flodine* are obvious, they are superficial at best. Both cases, it is true, involve the false designation of the geographic origin of a product. The *Flodine* court concluded that the IACA essentially gave Indian tribes the exclusive right to market their products as being Indian-made; because of that exclusivity, that right became proprietary to a distinct group of craft sellers such that it was both a distinct "style" of doing business and was capable of being "misappropriated." Here, however, the vague appellation that something is "Made in America" is far-removed from the "style" of doing business as an authentic Native American business; falsely

3

advertising that something is made in the United States might deceive consumers, but doing so does not "misappropriate" anyone's "style" of doing business.

*Flodine* stands for the principle that a false claim of geographic or ethnic origin can give rise to an advertising injury, but only when the injury is visited upon a distinct group that can legitimately claim its way of doing business has been misappropriated. Northland cannot make such a claim here. It would be a different case, for example, if Northland had falsely advertised "Door County cherries," "Champagne," or even "Wisconsin cheese"–distinct sources of products, like Native American craftsmen, that are favorably associated with the products they produce. Growing cherries in Door County or producing sparkling wine from the Champagne region suggests a certain kind of quality that is unique to a distinct subgroup of producers, and thereby reflective of a certain "style" of doing business. As the Seventh Circuit recently put it in another Native American goods case: "by appropriating NAA's advertising strategy, Stravina took sales away from those whose heritage gives them the right to capitalize on the market value and goodwill associated with authentic, Native American-made products." *Native American Arts, Inc. v. Hartford Cas. Ins. Co.* 435 F.3d 729, 733 (7th Cir. 2006). In stark contrast, the claim here involves an extremely broad place of origin–the United States–having no discernible connection to the manufacture of illuminated fishing lures. More importantly, the "Made in the USA" designation is so widespread that it cannot have been Armament's "advertising idea" or "style" of doing business. In other words, the "Made in the USA" label is so general that it was not Armament's idea to misappropriate.

This is made clear by *Sorbee Intern. Ltd. v. Chubb Custom Ins. Co.,* 735 A.2d 712, 714 (Pa. Super. 1999), in which the court found that labeling products "low calorie" or "sugar free" was so

common that doing so did not constitute an advertising idea. An "advertising idea," the court concluded, was "an idea for advertising that is 'novel and new,' and 'definite and concrete,' such that it is capable of being identified as having been created by one party and stolen or appropriated by another." *Id.* Thus, the insurer had no duty to defend the claim that the defendant had misappropriated an advertising idea because "[t]he terms at issue here do not constitute an original, novel idea that was created by Simply Lite and stolen by Sorbee. They are straightforward descriptive material not formed or sequenced in any way so as to constitute novel or special usage." *Id.* at 714-15.

## CONCLUSION

Armament's claim that Northland violated Wis. Stat. 100.18 by falsely advertising that its fishing lures were made in the United States does not arguably constitute a claim for advertising injury under the Cincinnati policies. Accordingly, Cincinnati has no duty to defend Northland in this action. And since the duty to defend is broader than the duty to indemnify an insured, it also follows that Cincinnati has no duty to indemnify. Cincinnati's motion for summary judgment is therefore **GRANTED** and Northland's motion is **DENIED**.

**SO ORDERED** this   28th   day of August, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

5

Case 1:01-cv-01122-WCG   Filed 08/28/06   Page 5 of 5   Document 126